·FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

2016 DEC 13  PM 1: 25

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

CARRIE BOYER, individually
and on behalf of all others
similarly situated,

        Plaintiff,

v.

DIVERSIFIED CONSULTANTS,
INC., LIVEVOX, INC.; DONALD
ZEHNDER; CHRISTOPHER
ZEHNDER; CHARLOTTE L.
ZEHNDER;;
GORDON BECK III; MICHAEL
ANNA; DAVID GOODWIN, and;
RAFAL LESZCYNSKI,

        Defendants.

Case No. _____

6:16-cv-2136-ORL-31TBS

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## COMPLAINT & JURY DEMAND

Plaintiff, CARRIE BOYER, individually, on behalf of herself and all others similarly situated, by and through her undersigned attorneys, sues Defendants and alleges:

## INTRODUCTION

1.    This class action involves the illegal placement of calls by Diversified Consultants, Inc. ("DCI") by and through its affiliate, LiveVox Inc., to hundreds if not thousands of cell phone subscribers using an

automatic telephone dialing system and/or artificial or prerecorded messages. DCI and LiveVox use their automated dialers and systems in a predatory way to call consumers to collect accounts. In the course of these collections, they often wrongly contact individuals, such as the Plaintiff, who owe no money or never consented to receiving calls.

2.     Plaintiff, CARRIE BOYER (hereinafter, "Plaintiff" or "BOYER") brings this Complaint for damages, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants, Diversified Consultants, Inc., (hereinafter, "Defendant" or "DCI") and its affiliate, sub-contractor, joint venturer and /or agent, LiveVox, Inc. ("LiveVox") in negligently and/or intentionally and repeatedly contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff brings this action for damages on behalf of herself and all consumers or other protected persons similarly situated, against Defendants for the above referenced violations.

3.     DCI and LiveVox acting in concert placed numerous telephone calls to Plaintiff's cell phone using an Automated Telephone Dialing System (ATDS) attempting to collect a debt allegedly owed by a person other than Plaintiff.

4.     This case is filed on behalf of Plaintiff and a class of similarly situated individuals for damages to stop Defendants' practice of placing computer generated calls to non-debtors and other individuals who have not consented to being contacted in this manner.

5.     Plaintiff is informed and believes and based thereon alleges that all Defendants were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint ventures and employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

6.     The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Serves., LLC*, 132 S. Ct. 740, 744 (2012).

3

7.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors, debt collectors and telemarketers may call them, and made specific findings that

> "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11.

Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at\* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

8.     The TCPA gives rulemaking authority to the Federal Communications Commission (FCC) to prescribe regulations to implement the requirements of the TCPA. 47 U.S.C. § 227(b)(2).

9.     The TCPA regulates the use of automated telephone equipment, also known as Automated Telephone Dialing Systems (ATDS), autodialers or robodialers, which have the capacity to store or produce telephone

numbers to be called, using a random or sequential number generator, and to dial such numbers.

10.    The TCPA makes it illegal to use autodialers to place calls to a cellular phone other than for an emergency purpose or with the prior express consent of the called party.

11.    In 2003, the FCC issued a Report and Order addressing, in part, autodialed and prerecorded message calls made to cellular telephone numbers. The FCC affirmed that, with two narrow exceptions, it is unlawful to make *any call* using an automatic telephone dialing system or artificial or prerecorded message to any wireless number. The exceptions, inapplicable to the instant case, include calls made for emergency purposes and with prior express consent. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R 14014, 14115-16 (2003).

12.    Although the collection industry has argued to the contrary, the TCPA prohibitions are not limited to telemarketing calls; debt-collection calls are covered. *Mims v Arrow Financial Services, LLC*, U.S. Supreme Court, 421 Fed. Appx. 920 (2012), *Brown v. Hosto & Buchan, PLLC*, 748 F.Supp.2d 847 (W.D. Tenn. 2010); *In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 F.C.C.R. 559, 561 (2008)

("ACA Declaratory Ruling"); *Brown v. Enterprise Recovery Systems, Inc.*, No. 02-11-00436-CV, 2013 WL 4506582, *5 (Tex. App. Aug. 22, 2013).

13.     A predictive dialer constitutes an automatic telephone dialing system within the meaning of the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, F.C.C. 07-232, 23 F.C.C. R. 559, 566 ¶ 12 & 13 (Dec. 28, 2007) released Jan. 4, 2008). In that Ruling, the Federal Communications Commission ("FCC") for a second time rejected the position that a predictive dialer only meets the definition of an ATDS when it randomly or sequentially generates numbers. Rather, it stated "In this Declaratory Ruling, we affirm that a predictive dialer constitutes an automatic telephone system and is subject to the TCPA's restrictions on the use of autodialers." 23 F.C.C. R. 559, 566.

14.     Also included in the TCPA definition, is equipment and software which automatically dials telephone numbers stored in data bases and lists.

15.     On July 10, 2015 the FCC released its written Declaratory Ruling and Order, FCC 15-72, (the "FCC Omnibus Order") in response to 21 petitions filed with the agency by various companies and trade associations seeking relief or clarification regarding the TCPA and affirmed

its previous orders (2003 and 2008) holding amongst other things, that predictive dialers constituted an ATDS as defined by the TCPA.

## JURISDICTION AND VENUE

16.     Jurisdiction of this Court arises under 47 U.S.C. § 227(b) and 28 U.S.C. §§1331 and 1337.

17.     Venue is proper in this District Court because Plaintiff resides in this District and Defendants are subject to personal jurisdiction because they conduct business within this District.

## PARTIES

18.     Plaintiff BOYER is an adult natural person and a resident of the City of Kissimmee, Osceola County, Florida.

19.     Defendant, DCI, is a foreign corporation doing business in Florida, with its principal place of business located in Jacksonville, Florida.

20.     Defendant, LiveVox, Inc. (LiveVox) operates a telecommunications company which maintains automated dialing systems.   According to the sworn affidavit of Co-Defendant Rafal Lezcsinski, LiveVox initiates calls on behalf of DCI.

21.     Defendant, Donald Zehnder, is an adult natural person who resides in the State of Florida.   Mr. Donald Zehnder is on DCI's executive committee, responsible for the day-to-day operations of DCI.

7

22.    Defendant, Christopher Zehnder, is an adult natural person who resides in the State of Florida. Mr. Christopher Zehnder is on DCI's executive committee, responsible for the day-to-day operations of DCI.

23.    Defendant, Charlotte L. Zehnder, is an adult natural person who resides in the State of Florida. Ms. Charlotte L. Zehnder is on DCI's executive committee, responsible for the day-to-day operations of DCI.

24.    Defendant, Gordon Beck III ("Beck"), is an adult natural person who resides in the State of Florida. Mr. Gordon Beck is on DCI's executive committee, responsible for the day-to-day operations of DCI.

25.    Defendant, Rafal Leszczynski ("Leszczynski"), is an adult natural person who resides in the State of Florida.  Mr. Leszczynski is believed to be the current Vice President of Operation Systems and formerly served as DCI's Directory of Operations and Dialing Systems.  As such, Mr. Leszczynski has day-to-day control over DCI's automated dialing systems.

26.    Defendant, Michael Anna ("Anna"), is an adult natural person who resides in the State of Florida.  Mr. Anna is believed to be a Senior Vice President at DCI and leads DCI in its operations in his capacity as the Senior Vice President, he oversees 42 managers including those who control DCI's automated dialing systems.

27.     Defendant David Goodwin ("Goodwin") is an adult natural person, who resides in the State of Florida.  Mr. Goodwin is believed to be the Chief Compliance Officer at DCI and has direct control over DCI's use of automated dialing systems.

28.     Defendant, LiveVox, Inc., ("Livevox"), is a foreign corporation doing business in Florida, with its principal place of business located in San Francisco, California.

## FACTS

### The DCI LiveVox Dialing and Messaging System

29.     DCI is defined as "any person," prohibited from auto-dialing cellular phone devices pursuant to 47 U.S.C. § 227(b)(1)(iii).

30.     In promoting its services, DCI advertises that it uses "the most cutting edge technology the industry has to offer." (DCI website "Our Story" page, http://www.dcicollect.com/about/dci-about.html; downloaded June 29, 2015).

31.     LiveVox is the dialing and technology company utilized by DCI to place collection calls and to convey automated and prerecorded messages to individual consumers.

32.     The LiveVox technology allows DCI and LiveVox together, to automatically dial thousands of telephone numbers at extremely low cost, and to schedule a pattern of repeated telephone calls at pre-programmed dates and times.

33.   LiveVox also provides Interactive Voice Response ("IVR") systems (See LiveVox website IVR page: http://www.livevox.com/applications/ivr/) to DCI.

34.   LiveVox's IVR systems use pre-recorded voices to guide people through various menus in a telephone communication system.

35.   DCI partners with LiveVox, in creating and developing its automated dialing collection campaigns.

36.   LiveVox was involved in creating and/or implementing DCI's procedures relating to contacting consumers using an automatic telephone system or using an artificial or prerecorded voice messages.

37.   LiveVox provides or provided the automated dialing software systems for DCI at the time the calls were placed to BOYER and placed the calls to Boyer and a class of similarly situated individuals.

38.   LiveVox provides or provided the IVR technology for DCI's prerecorded voice messaging communications to BOYER and a class of similarly situated individuals.

39.   The LiveVox system used by DCI is an ATDS. *Lardner v. Diversified Consultants, Inc.*, 2014 WL 1778960 *5 (S.D.Fla. May 1, 2014). *Davis v. Diversified Consultants, Inc.*, 2014 WL 2944864 *5 (D. Mass. June 27, 2014)("the Livevox system, as utilized by Defendant, was an ATDS"); *Echevvaria v.*

*Diversified Consultants, Inc.*, 2014 WL 929275 (S.D. N.Y. Feb. 28, 2014), at *5-7.

*Haire v Sprint Communications Co., L.P., et al.*, 2:13-cv-00701(N.D. Ala. March 31, 2015).

40.    In *Echevvaria v. Diversified Consultants, Inc.*, 2014 U.S. Dist. LEXIS 32136 (S.D. N.Y. Feb. 28, 2014) the Court issued an extensive written decision holding that LiveVox uses a predictive dialer which is an ATDS within the meaning of the TCPA, and granted summary judgment to the Plaintiff.

41.    Likewise, the *Davis* court citing *Echevvaria,* found that "it is undisputed that LiveVox is a 'predictive dialer' that dials from lists of numbers ... viewing the facts in the light most favorable to defendant, the evidence demonstrates that defendant used an ATDS to call plaintiff, without his prior consent. Accordingly, plaintiff is entitled to summary judgment that defendant violated § 227 of the TCPA." *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, at 226 (D. Mass. 2014).

### Principals, Officers and Agents of DCI

42.    Defendant Donald Zehnder is responsible, all or in part, for the day-to-day operations of DCI, including but not limited to, the responsibility of overseeing and directing the use of the LiveVox autodialing and IVR systems and managing DCI's telephone campaigns.

43.    Defendant, Christopher Zehnder, is the President of DCI.  In  that capacity, and in other roles at DCI, he is responsible for the day to day operations of DCI, including, but not limited to, the responsibility of overseeing and directing the use of the LiveVox autodialing and IVR systems and managing DCI's telephone campaigns.

44.    Defendant Charlotte Zehnder is the current CEO of DCI and at all relevant times has been on DCI's executive committee.  In those capacities and in other roles at DCI, she is responsible for the day to day operations of DCI, including, but not limited to overseeing and directing the use of the LiveVox autodialing and IVR systems and managing DCI.

45.    Defendant Beck is the Chief Operating Officer of DCI.  In that capacity, he is responsible for overseeing and directing the use of the LiveVox autodialing and IVR systems and managing DCI's telephone campaigns.

46.    Defendant Anna is the Senior Vice President of DCI.  In that capacity he is responsible for Strategic Planning for DCI's "Dialer Strategy," "Call Strategy," and "Campaign Building."

47.    Defendant Goodwin is the Chief Compliance Officer of DCI.  In that capacity, he is responsible for ensuring that DCI is in compliance with the TCPA and collection laws.  This includes monitoring the autodialed and IVR campaigns

conducted by LiveVox, handling consumer complaints regarding calls made by the LiveVox system and TCPA litigation.

48. Defendant Leszczynski is the DCI Director for Operations and Dialing Systems. In that capacity, Leszczynski has authority and control over the DCI autodialing program. Leszczynski directs and facilitates the transmission of data from DCI to LiveVox, including the creation and transmission of phone number lists for the LiveVox phone campaigns.

49. Upon information and belief, these individual Defendant Principals, Officers and Agents of DCI actually committed the conduct that violated the TCPA, and/or actively oversaw and directed the conduct and are therefore liable in their own individual capacities under 47 U.S.C. § 217.

### Allegations relating to Collections against Ms. Boyer

50. BOYER maintains a cellular phone via a "cellular telephone service" as described in 47 U.S.C. § 227(b)(1)(A)(iii).

51. Boyer maintains this phone for her own personal convenience, to maintain contact with her friends and family, and for emergency purposes.

52. Between December 8, 2012 and December 26, 2012, Defendants placed numerous telephone collection calls to Plaintiff's cellular telephone number, 407-683-1477, with the use of its automated telephone dialing system

(hereinafter "ATDS") in an attempt to collect a debt from an individual other than Plaintiff.

53.    DCI's call records show that it placed calls to BOYER'S phone number using the Livevox system on the following dates in 2012: Dec. 11 at 3:17 PM; Dec. 12 at 4:20 PM; Dec. 13 at 6:05 PM and 8:37 PM; Dec. 14 at 8:47 AM; Dec. 19 at 6:00 PM and 6:01PM and Dec. 26 at 4:35 PM.

54.    Some or all of these calls included a prerecorded or artificial voice message conveyed by DCI through the Livevox IVR system.

55.    DCI's calls interrupted BOYER when she was involved in her other activities.

56.    DCI's calls caused BOYER to lose time from her normal activities while and when answering DCI's calls and trying to determine who was calling her.

57.    During such calls BOYER was deprived of the use of her cellular device to use as she pleased including but not limited to placing outgoing calls and answering incoming calls which were more important to her.

58.    DCI calls used BOYER's cell phone plan minutes.

59.    DCI calls caused BOYER to become frustrated and annoyed.

60.    DCI's harassing calls originated from telephone numbers including, but not limited to 407-982-4545 and 813-664-8769.

14

61. Plaintiff never gave DCI her cellular phone number or consent to call her cell phone number.

62. Rather, DCI used "TU Contact Locator," a skip tracer, to obtain contact information for a related person against whom DCI was seeking to collect a debt. DCI obtained BOYER'S number as a result of that search.

63. DCI used an automatic telephone dialing system as defined at 47 C.F.R. 64.1200(f)(1) to make the above-described calls to Plaintiff's cellular telephones with its ATDS.

64. DCI made repeated automated calls to Plaintiff's cell phone in violation of the TCPA's prohibitions on automated calls to cell phones. See 47 U.S.C. 227(b).

65. Defendants are not tax exempt nonprofit organizations as the phrase is used in the TCPA, 47 U.S.C. §227(a)(4).

66. DCI used an automatic telephone dialing system as defined by 47 U.S.C. §227(a)(1) to make the above-described calls to Plaintiff's cellular telephone, without Plaintiff's prior express consent and for a non-emergency purpose, in violation of the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

67. DCI knowingly violated the TCPA.

68. DCI willfully violated the TCPA.

## Class Definition and Class Issues

69.     Plaintiff brings this action on behalf of herself and a class of all other persons similarly situated, pursuant to Fed.R.Civ.P. 23.

70.     Plaintiff proposes to represent the following classes:

a. Autodialer Class:

"All persons residing in the territorial United States, excluding the Court and its staff, who (1) received any non-emergency telephone call from DCI (2) to the called party's cellular telephone, (3) made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, (4) where DCI's records indicate at least one such call was a "wrong number" call, whether dispositioned as "wrong number," a non-party,  or as "do not call," or where the person owning the number called was not the person that DCI intended to call  (5) within the four years prior to the filing of the original Complaint in this action."

b. Prerecorded or Artificial Voice Message Class:

"All persons residing in the territorial United States, excluding the Court and its staff, who (1) subscribed to a cellular telephone to which LiveVox delivered, or conveyed, a prerecorded or artificial voice message in the four years preceding the filing of this action through the date of certification, and (2) whose phone numbers were collected by DCI following receipt of the account, from sources other than the target of the call."

71.     Plaintiff represents and is a member of each Class. Defendants, their employees and agents are excluded from the Class.

72.     Based upon internet complaints to, or regarding, DCI, it appears that the proposed class includes several hundred members if not much more.

73.     The class is numerous, and contains members from all over the United States, making joinder of all plaintiffs impracticable.

74. This complaint seeks monetary damages under Fed.R.Civ.P. 23(b)(3).

75. The class claims present common questions of law and fact, including:

    a. Whether, within the four years prior to the filing of the original Complaint in this action, DCI made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) to the Plaintiff and any Putative Class Member using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

    b. Whether DCI continued to place calls to the cellular telephone numbers of Plaintiff and Putative Class members despite having information indicating that the called party was not the correct debtor in the transaction subject to collection;

    c. Whether DCI had prior express consent to initiate calls to cellular phones of BOYER and the other class members using an ATDS or prerecorded/artificial voice messages;

    d. Whether DCI collected numbers from skip traces or consumer reports for autodialing;

    e. Whether DCI scrubbed the telephone numbers against cell phone lists prior to inputting those numbers into lists or its auto dialer;

    f. Whether DCIs conduct was knowing and/or willful;

    g. Whether DCI is liable for damages, and the amount of such damages;

    h. Whether DCI should be enjoined from engaging in such conduct in the future; and

    f. Whether DCI's conduct was knowing and/or willful.

76.     These common questions predominate over any questions involving only individual class members.

77.     Plaintiff's claims are typical of the class she seeks to represent, and involve the same legal and remedial theories.

78.     Plaintiff will fairly and adequately protect the interest of the class.

79.     Specifically,

a.      Plaintiff has no adverse interest to the class.

b.      Plaintiff has retained counsel who is experienced in litigation under the TCPA,

c.      Plaintiff has suffered similar injuries to the member of the classes she seeks to represent through this action.

d.      Neither Plaintiff, nor her counsel, have any interests which may cause them to not vigorously pursue this action.

80.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

a.      No individual class member could be expected to hold a strong interest in individually controlling the prosecution of separate claims against Defendant because the claim amounts are likely small, and involve statutory damages under the TCPA.

b.      Management of these claims will likely present few difficulties because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

## COUNT I

### Class Claims for Damages

18

**Telephone Consumer Protection Act of 1991 and 47 C.F.R. 16.1200, et seq.**

81.     Plaintiff re-alleges and incorporates the aforementioned paragraphs above as if fully set forth herein, and further states:

82.     Defendants negligently violated the TCPA, 47 U.S.C. § 227 *et seq.* in relation to Plaintiff and the class members.

83.     As a result of Defendants' negligent violations of the TCPA Plaintiff, and the class members, may recover statutory damages of $500.00 for each and every call in violation of the statute. 47 U.S.C. § 227(b)(3)(B).

84.     Alternatively, Defendants knowingly and willfully violated the TCPA in relation to Plaintiff and the class members.

85.     As a result of Defendants' willful violations of the TCPA, Plaintiff and the class members may recover treble the damages for each and every call in violation of the statute. 47 U.S.C. § 227(b)(3).

## Demand for Jury Trial

Plaintiff demands trial by jury in this action.

## Claims for Relief

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Classes requests judgment against Defendants as follows:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiff as representative of the Classes;

C.    Appointment of the undersigned counsel as counsel for the Classes;

D.    A declaration that Defendants and/or its affiliates, agents and/or other related entities' actions complained of herein violate the TCPA.

E.    An award to Plaintiff and Classes of damages, as allowed by law;

F.    An award to Plaintiff and Classes, of attorneys' fees and costs, as allowed by law and/or equity;

G.    Leave to amend this Complaint to conform to the evidence presented at trial; and

H.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

Dated: December 6, 2016             Respectfully Submitted,

*/s/ Scott D. Owens*
Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
Attorney for Carrie Boyer
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: (954) 589-0588
scott@scottdowens.com

*/s/ Rex C Anderson*
Rex C. Anderson (P47068)
REX ANDERSON, PC
Attorney for Carrie Boyer
9459 Lapeer Rd. Ste. 101
Davison MI 48423
(810) 653-3300
rex@rexandersonpc.net

By:  s/ Julie A. Petrik
Julie A. Petrik (P-47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney for Carrie Boyer
24500 NorthwesternHighway, Ste. 206
Southfield, MI 48075
PHONE: (248) 208-8864
Julie@MichiganConsumerLaw.Com